**In re Stephen Alan SCHUPP, Debtor.**

**Stephen Alan Schupp, Movant,**

**v.**

**Teri J. Bearson, Respondent.**

**No. A03–97887–SWC.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Jan. 15, 2004.

Brian R. Cahn, Perrota & Associates, P.C., Cartersville, GA, for Plaintiff or Petitioner.

Gary S. Freed, Steven A. Wagner, Freed & Berman, Atlanta, GA, for Defendant or Respondent.

## ORDER

STACEY W. COTTON, Chief Judge.

Before the court is Debtor Stephen Alan Schupp's ("Debtor" or "Movant") motion to avoid the judicial lien of Respondent Teri J. Bearson ("Respondent"), pursuant to 11 U.S.C. § 522(f)(1)(A). Respondent filed a response, contending that Debtor undervalued his residence listed on his bankruptcy schedule and that, if Debtor had properly valued this property, her lien would not impair his exemption. Debtor, Debtor's counsel, and counsel for Respondent appeared for a hearing on the matter on October 16 and 23, 2003. At the hearing, Respondent also argued that the bankruptcy court, as a court of equity, should determine that her lien is an unavoidable, equitable lien. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(K). Upon consideration of the evidence and arguments, the court's findings of fact and conclusions are set forth below.

### FACTS

Debtor filed his Chapter 7 case on July 24, 2003. Debtor's Schedule A, "Real Property," lists his residence as a house and lot on Freemanville Rd., Alpharetta, Georgia, with a market value of $213,000 and a mortgage of $206,000. Schedule C, "Property Claimed As Exempt," references the same house and lot and reflects a $7,000 exemption pursuant to O.C.G.A. § 44–13–100(a)(1). On October 23, 2003, the amount of the claimed exemption was amended to $20,000, the maximum amount allowed under the statute. O.C.G.A. § 44–13–100(a)(1).

Debtor and Respondent had previously been engaged and lived in the house until they ended their engagement, and Respon-

dent moved away. Debtor subsequently married, and he and his wife live in the home and did so at the time this case was filed. Respondent obtained a pre-petition judgment against Debtor in the Magistrate Court of Fulton County in the approximate amount of $12,192 on February 17, 2003, which was recorded on May 8, 2003.[1] The judgment is a judicial lien on the home.

The evidence before the court consists of the pleadings and documents filed in Debtor's Chapter 7 case; the testimony of the Debtor; the testimony of Laura Thatcher, former owner and current mortgage holder with her husband; the testimony of Debtor's appraiser, Larry Davis; the testimony of Respondent's appraiser, Jim Burnette; the appraisal reports; the Promissory Note; Deed to Secure Debt; and copies of several of Respondent's checks and a copy of her charge card statement.

### Debtor's Testimony

Debtor testified that he purchased the house in December 2001 for $210,000 from Mr. and Mrs. Thatcher who provided 100% owner financing. Debtor believed at the time that the property was worth approximately only $190,000, but he was willing to pay the higher amount because he had poor credit and could not buy a house through conventional financing. He stated without dispute that the house itself is not in good condition, has no garage or basement, and the heating and air conditioning are not working properly. (Transcript of Hearing, October 16, 2003 ["October 16th Hearing"], at 13). It has three bedrooms, two of which are very small, and two bathrooms, both in need of repairs. It has a very small kitchen and no landscaping. (October 16th Hearing, at 14). The biggest problem is that the house is settling

**1.** According to Respondent's response to Debtor's motion to avoid lien, the judgment arose out of a suit for breach of contract and a bad check.

at a rapid rate. The floors are sagging and the deck is about three inches or more lower than it was a year earlier. The heating system ducts were damaged by a flood and need to be replaced. Some of the facial boards are rotted and the house needs to be painted. (October 16th Hearing, at 15). The house has imitation hardwood floors and eight foot ceilings, except for the living-room. (October 16th Hearing, at 35). The house is situated on 2.028 acres. (October 16th Hearing, at 16).

### Debtor's Appraiser, Larry Davis

Mr. Larry Davis stated that he inspected both the interior and exterior of the house. He testified that the house was 1,623 sq. ft.,[2] on 2.028 acres, has cedar siding, and a settlement problem. The front porch and deck sag, and the floor bounces up and down because of the settlement. (October 16th Hearing, at 37, 39). The flex duct part of the heating and air system is falling apart and needs to be replaced.

When questioned as to value of Debtor's property, Mr. Davis stated, without objection, that the Fulton County tax records assessed the value of Debtor's property at $204,800. (October 16th Hearing, at 40). He further testified that he reviewed three comparable properties, set forth in his appraisal report which indicated a range in fair market value from $177,000 to $182,000. Based upon his analysis, he concluded the fair market value of the subject property to be $180,000. (October 16th Hearing, at 41–43).[3]

### Respondent's Appraiser, Jim Burnette

Mr. Jim Burnette testified that he made a "drive-by" appraisal of Debtor's property. He did not inspect the interior of the house and conceded he would not have been able to determine any structural damage. He analyzed four comparable properties set forth in his appraisal report. These comparable sales were $220, 154; $234,860; $246,540; and $255,320. Based upon his analysis he concluded that the fair market value of Debtor's property is $240,000.

Following the October 16, 2003 hearing, Mr. Burnette did additional research and found a fifth comparable that closed on October 2, 2003, on the subject street, about a quarter mile from Debtor's property that sold for $249,500. (October 23rd Hearing, at 28). He considers the fifth comparable to be the best comparable. He repeated his opinion that the fair market value of Debtor's property is $240,000. (October 23rd Hearing, at 39–46).

Mr. Burnette did agree that if structural damage was extensive enough an adjustment should be made. (October 23rd Hearing, at 27, 31). In analyzing the comparables, he incorrectly used 2.92 acres for the subject property, rather than the correct measure of 2.028 acres.[4] (October 23rd Hearing, at 33). Based on this acreage error, he acknowledged his first comparable should be adjusted downward by $25,000, from $234,860 to $209,860; his second comparable should be adjusted downward by $10,000, from $255,320 to $245,320; his third comparable should be adjusted downward by $10,000, from $220,154 to $210,154; his fourth compara-

---

**2.** Respondent's appraiser uses 1,637 sq. ft., rather than the 1,623 sq. ft. used by Debtor's appraiser without explanation.

**3.** Respondent's appraiser's major criticism of Debtor's appraisal is that the comparable properties are too far away and two are in the city of Roswell rather than in the city of Alpharetta. (October 23rd Hearing, at 46).

**4.** Mr. Burnette used 2.028 acres in his report of the fifth comparable.

ble should be adjusted downward by $25,000, from $246,540 to $221,540. (October 23rd Hearing, at 33–41).

Mr. Burnette also indicated that a deduction of $3,000 for having a brick exterior on comparables three and four would not be out of line, which would reduce their value to $207,154 and $218,540, respectively. (October 23rd Hearing, at 38).

Mr. Burnette has not made any adjustment in the comparables for the structural damage. After making such an adjustment based on Mr. Davis's figure of $5,000, the fair market value of Respondent's comparables one through five are $204,860; $240,320; $205,154; $213,540; and $235,007, respectively.[5]

### Laura Thatcher

Mrs. Thatcher testified that she sold the property to Debtor for $210,000, approximately $20,000 higher than what it was worth. Since she and her husband were at considerable risk through owner financing, less a small down payment from Debtor's pre-purchase lease payments, Mrs. Thatcher considered the increased price to be appropriate. (October 23rd Hearing, at 9). At the time of bankruptcy filing, the outstanding mortgage balance on the residence was $205,579.40. (October 23rd Hearing, at 10). Additionally, Ms. Thatcher stated that she is familiar with land values in this area and that she frequently purchases land in this area and deems $50,000 an acre to be the fair market value of property in this area. (October 23rd Hearing, at 9). In fact, she stated that just three months ago she and her husband had been offered acreage in this area for $50,000 per acre. (October 23rd Hearing, at 10).

### Chapter 7 Trustee

After investigating the matter, the Chapter 7 Trustee filed a no distribution report, stating that Debtor's estate had been fully administered. He made no attempt to sell Debtor's home for the benefit of the creditors of Debtor's Chapter 7 estate. Thus, he effectively abandoned any estate claim to this property. 11 U.S.C. § 554(c).

### DISCUSSION

*(1) 11 U.S.C. § 522(f)(1)(A)*

Section 522(f)(1)(A) allows a debtor to avoid a judicial lien to the extent it impairs a debtor's exemption. Georgia, which opted out of the federal exemption scheme, permits a married debtor to exempt a maximum of $20,000 in property he uses as a residence. O.C.G.A. § 44–13–100(a)(1).

The Eleventh Circuit, affirmed the bankruptcy and district courts' decisions in *Lehman v. VisionSpan, Inc. (In re Lehman)*, 205 F.3d 1255 (11th Cir.2000), which establishes the proper method for calculating the avoidability of a judicial lien where debtor and his spouse jointly owe a first mortgage on their jointly owned home which is also subject to a second priority judicial lien owed solely by the debtor. First, the mortgage is deducted from the total value of the home to establish the net equity which is divided equally between debtor and his spouse. Then, the mathematical formula provided in 11 U.S.C. § 522(f)(2)(A) is applied to debtor's one half equity interest. To the extent the judicial lien would not permit the debtor to take his exemption in the property, the

---

**5.** Debtor's appraiser's major criticism of Respondent's appraisal is that the sales are too old and some of the features are too different, e.g., subject property has 1,623 sq. ft. while comparable #1 has 2,544 sq. ft. and comparable #3 has 3,098 sq. ft. (October 16th Hearing, at 45–46, 48).

judicial lien impairs debtor's exemption and is avoidable. However, a creditor retains its judicial lien on any unencumbered, non-exempt portion of debtor's equity in the property.

Debtor argues that once the outstanding mortgage balance and his exemption ($205,579.40 + $20,000 = $225,579.40) are subtracted from the fair market value of his residence, there is no remaining value, whether the chosen fair market value is (1) the $213,000 value stated in his Schedule A, or (2) the Fulton County tax assessor value of $204,800, or (3) Mrs. Thatcher's value of $190,000, or (4) Mr. Davis's value of $180,000. Consequently, Respondent's judicial lien impairs his exemption.

Respondent argues that Debtor's property is worth $240,000. Consequently, Debtor has sufficient equity in the property that her lien does not impair his exemption. Respondent also contends that even if this court determines that her lien impairs Debtor's exemption, this court should, as a court of equity, find it to be an unavoidable, equitable lien.

The estimates of fair market value of Debtor's residence range from $180,000 to $240,000. The total of Debtor's outstanding mortgage balance and his exemption is $225,579.40. If the fair market value of Debtor's residence is $225,579.40 or less, Respondent's lien impairs Debtor's exemption and is an avoidable judicial lien. Respondent would be entitled to retain her judicial lien to the extent of any amount above $225,579.40.

Debtor testified that his home is not in good condition, has no garage or basement, the heating and air conditioning is not working properly and the house has a bad settling problem. (October 16th Hearing, at 13–15). Debtor's appraiser's testimony corroborates Debtor's testimony that his residence was in need of repairs and suffers from a settlement problem. Mr. Davis stated that he inspected the exterior and interior of Debtor's home and found

[t]he front porch is sagging. You can see on the back of the deck and the screen porch is sagging and you can tell that in the main part of the house, where the Pergo hardwood floor is that it bounces up and down because of the settlement. And also in the bathroom in the hall, he's got ceramic tile in there, and you can see it just bouncing. So it's going to crack.

(October 16th Hearing, at 39–40). He adjusted his calculation by $5,000 for this problem but stated that it could cost much more to correct. A structural engineer would be needed to determine a more exact cost. (October 16th Hearing, at 51). This evidence stands undisputed in this record.

In preparing his appraisal, Mr. Davis identified three comparables. All three comparables closed over six months ago and were more than one mile from Debtor's property.[6] Comparables one and two, valued at $177,000 and $180,000, respectively, are in Roswell, Georgia. His third comparable valued at $182,000, like Debtor's property, is located in Alpharetta, Georgia. Based upon his analysis, he estimated the fair market value of Debtor's property at $180,000. (October 16th, at 41–43). The court finds this valuation to be so far below the actual sale value of the property that it simply is not credible or persuasive.

Mr. Burnette performed a "drive-by examination." He acknowledged that he

---

**6.** Mr. Davis measured distance from the subject property in terms of driving distance, unlike Mr. Burnette who measured the distance "as the crow flies." The evidence does not establish whether there is actually any material difference between the two appraisals if the same measure is used.

made no interior examination. There is no evidence that he actually examined the exterior of the property, except what he could observe in a "drive-by." He says he just researched the property. Yet, his research resulted in his use of 2.92 acres of land for Debtor's property when, in fact, the acreage is 2.028 acres.

When his comparables are adjusted for the acreage and settlement issues and difference in exteriors, Mr. Burnette's comparables are $204,860; $240,320; $205,154; $213,540; and $235,007, respectively. Three of the five comparables, when adjusted, indicate a value below $225,579.40. Mr. Burnette's comparables #2 and #5 are valued at $240,320 and $235,007, respectively. Both are larger and have basements while Debtor's property has only a crawl space. These two properties also appear quite different from the subject property because they have basements and two car garages attached to the houses and appear to have more curb appeal.

Mr. Burnette acknowledged that his limited examination of Debtor's property failed to disclose the settling problem and other defects of Debtor's property. The court finds and concludes that his appraisal value of $240,000 simply is not credible. Respondent's evidence is not persuasive and fails to establish any factors that would account for a $30,000 increase in value of Debtor's property since the purchase for $210,000.

Mrs. Thatcher's testimony was very credible and persuasive. She and her husband have been active buyers and sellers of property in this area for a significant period of time. (October 23rd Hearing, at 9–10). She explained her opinion that the fair market value of the property is $190,000, she discussed the previous parcels of property she had bought and sold, what she had paid for them, how she had divided them, and that an acre of land in

the area is worth approximately $50,000. (October 23rd Hearing, at 7–10). Mrs. Thatcher's testimony completely refutes the contention of Respondent that Debtor's land alone is worth $250,000. (October 16th Hearing, at 52–55).

The highest and best evidence of the fair market value of property is what a willing buyer would pay a willing seller. Here, Debtor willingly agreed to purchase and the Thatchers agreed to sell this property for $210,000 in December 2001. Based on the residence's sagging and settlement and other problems established by the evidence and the lack of persuasive credible evidence to establish a substantial increase in land values, the court finds that there has been little or no increase in the value of Debtor's residence. To the extent that it may have occurred, it is consistent with Debtor's estimate of value stated in his schedules. For the foregoing reasons, the court finds and concludes that the fair market value of Debtor's house and 2.028 acres of land is $210,000. Therefore, the judicial lien of Respondent impairs Debtor's exemption and is avoidable pursuant to 11 U.S.C. § 522(f)(1)(A) and O.C.G.A. § 44–13–100(a)(1).

*(2) Respondent's Equitable Lien Theory*

Respondent contends that the court should determine Respondent's judicial lien is an unavoidable, equitable lien. The parties were agreeable to stipulating to Respondent's judgment in the approximate amount of $12,192. It arises from a breach of contract and bad check.

Respondent cited three cases in support of her contention. None of them, however, are applicable. The Eleventh Circuit decision, *Weed v. Washington (In re Washington)*, 242 F.3d 1320 (11th Cir.2001), involves an attorney's charging lien which by definition is not a judicial lien. In *Herman v. Whitacre (In re Herman)*, 95 B.R. 504 (Bankr.N.D.Ohio 1989), the debtors

improperly, without consent, used funds of a sister to buy a home. The court found that an equitable lien arose in favor of the sister and could not be avoided. Finally, in *In re Davis,* 96 B.R. 1021 (Bankr. M.D.Fla.1989), the court found that an equitable "vendor's lien" arose and could not be avoided by the debtors. That court held that it was an equitable lien, which existed prior to the commencement of the legal proceedings, and it was not a judicial lien.

Respondent introduced copies of four checks drawn on her bank account to pay mortgage payments, a utility payment, and a charge card statement showing payment of taxes. While Debtor did not dispute Respondent's Exhibits, he testified that he and Respondent pooled their money to pay mortgage payments, utilities and taxes. (October 23rd Hearing, at 48–52). Respondent's evidence does not explain the source of funds for these payments and does not establish that such payments were made only with her funds. At best, the evidence indicates Respondent may have voluntarily used some of her own funds for some mortgage, utility, and tax payments. Further, there is no evidence that there is a pre-existing equitable lien in Respondent's favor. The court finds and concludes that Respondent has not met her burden of proof to establish an equitable lien. Accordingly, it is

ORDERED that Respondent's objections to the valuation of Debtor's residence and to the avoidance of her judicial lien are overruled, and Debtor's motion to avoid Respondent's judicial lien is granted.

The clerk is directed to serve a copy of this order upon counsel for Movant and Respondent.

IT IS SO ORDERED.